THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RAYMOND K. LICHTENFELS, and | ) | |
| KAREN I. LICHTENFELS | ) | |
| | ) | |
| Plaintiffs | ) | Civil Action No.09-1590 |
| | ) | Judge Nora Barry Fischer |
| v. | ) | |
| | ) | |
| ELECTRO-MOTIVE DIESEL, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

**I. Introduction**

    This case is before the Court on Plaintiffs' Motion to Remand. (Docket No. 7). The case involves an asbestos exposure-related claim originally filed in the Court of Common Pleas of Westmoreland County**,** Pennsylvania. *Raymond K. Lichtenfels and Karen I. Lichtenfels v. A.W. Chesterton Company, et al.*, Number 9725 of 2009. One of the named Defendants in the state proceeding, Electro-Motive Diesel, Inc. ("EMD" or "Defendant"), filed a Notice of Removal (Docket No. 1) of the Lichtenfels' ("Plaintiffs") claims in this Court. Defendant states that it is indemnified by General Motors Corporation ("GM"), which company is currently in bankruptcy proceedings before the United States Bankruptcy Court for the Southern District of New York. *In re Motors Liquidation Company, et al., f/k/a General Motors Corp., et al.*, C.A. No. 09-50026. Defendant argues that pursuant to 28 U.S.C. §1452 and Rule 9027 of the Federal Rules of Bankruptcy Procedure, the Western District of Pennsylvania has proper jurisdiction over the Plaintiff's claim. In response, Plaintiffs filed a Motion to Remand (Docket No. 7) their claims to state court, citing 28 U.S.C. §1452, or alternatively requesting that the Court abstain from hearing the case pursuant

to 28 U.S.C. §1334, as well as seeking attorney fees and costs.

For the reasons stated herein, the Court will GRANT Plaintiffs' Motion, in part, and DENY it, in part.

## II. Factual Background

Plaintiff Raymond Lichtenfels was an employee of Pittsburgh & Lake Erie Railroad, and Buffalo & Pittsburgh Railroad, from 1965 through 2004. (Docket No. 1-3 at ¶18). During his period of employment, Mr. Lichtenfels worked as a machinist, and was allegedly exposed to asbestos products and residue. (*Id.* at ¶19). Mr. Lichtenfels now suffers from lung cancer, diagnosed on July 15, 2008. (*Id.* at ¶¶20-21). Plaintiffs filed their state court claims, seeking damages from his employers and other related companies for his exposure to the asbestos and asbestos-containing products that those companies allegedly distributed, supplied, manufactured, or otherwise used in the course of each defendant's respective business. (*Id.* at ¶¶22-26).

EMD is a corporation that was formed November 29, 2004, in anticipation of the purchase of assets from GM in 2005. (Docket No. 11 at 2). The assets purchased by EMD included those necessary to the manufacture of locomotives, engines, and other related parts. (*Id.*) A purchase agreement between EMD and GM stated that GM would assume liability for asbestos exposure-related claims for products manufactured by GM prior to 2005. (*Id.*). The available indemnity portion of EMD's purchase agreement with GM, as provided by Defendant, is as follows:

> 10.01   <u>Indemnification by Sellers</u>.  From and after the Closing and subject to the provisions of this <u>Article 10</u> (including the limitations set forth in <u>Section 10.03</u>[1]), Sellers agree to pay and to indemnify fully, hold harmless and defend each Purchaser Indemnified Party from and against any and all Damages arising out of or relating to:

---

[1] The parties have not provided the text of Section 10.03 of the Indemnification Agreement.

2

>> (c)　　any Excluded Liability or Canadian Excluded Liability.
>
> \*\*\*
>
> **Excluded Claims**
>
> 1.　　Any Claim or Liability arising from the exposure, or alleged exposure, to asbestos contained in products of the Business manufactured prior to the Closing.

(Docket No. 10-2 at 11-12). Following the acquisition by EMD in 2005, GM filed for Chapter 11 bankruptcy in June of 2009. (Docket No. 11 at 2). Actions filed against GM while it is in bankruptcy court are being stayed pursuant to 11 U.S.C. §362 of the Bankruptcy Code. (*Id.*).[2]

**III. Procedural History**

Plaintiffs filed their action in the Court of Common Pleas of Westmoreland County, Pennsylvania, on November 2, 2009. (Docket No. 1-3). Their Complaint named Defendant, EMD, among other defendants. (*Id.*).[3] As noted, Plaintiffs sought damages from the named Defendants for

---

[2]

11 U.S.C. §362 provides, in part:

(a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title, or an application filed under section 5(a)(3) of the Securities Investor Protection Act of 1970, operates as a stay, applicable to all entities, of--
(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title

[3]
The other named defendants in the state court case are A.W. Chesterton Company; Anchor Packing Company; The Bigelow Company; Borg-Warner Corporation; Buffalo & Pittsburgh Railroad, Inc.; CSX Transportation; Ford Motor Company; Garlock Sealing Technologies, LLC; Genesee & Wyoming, Inc.; George V. Hamilton, Inc.; Honeywell International, Inc.; I U North America, Inc.; Ingersoll-Rand Corporation; and Metropolitan Life Insurance Company.

complications related to asbestos exposure, alleging in Counts I through VIII, liability due to strict product liability, negligence, the Federal Employee's Liability Act 45 U.S.C. §51 *et seq.*,[4] loss of consortium, and various other claims asserted against only defendant Metropolitan Life Insurance Company. (Docket No. 1-3 at ¶¶22-52).

Defendant EMD filed its Notice of Removal to the Western District of Pennsylvania on December 3, 2009. (Docket No. 1). Defendant then filed its Answer to Plaintiffs' Complaint on December 7, 2009. (Docket No. 5). Plaintiffs filed their Reply to Defendant's Answer and the instant Motion to Remand on December 16, 2009. (Docket Nos. 6-7). Defendant then filed a Response and Brief in Opposition on December 30, 2009 (Docket Nos. 10, 11). Plaintiffs sought leave of Court to file a Reply Brief (Docket No. 12), which was granted on January 5, 2010 (Docket No. 13), and filed same on January 15, 2010. (Docket No. 14).

As the parties have fully briefed the matter, it is now ripe for disposition.

**IV. Discussion**

The Court is faced with a series of questions to resolve in this matter. (1) Was the state court proceeding "related to" the GM bankruptcy, making removal proper under 28 U.S.C. §1452(a)? (2) If so, was the proceeding a "core" proceeding or was it a "non-core" proceeding, subject to mandatory abstention under 28 U.S.C §1334(c)(2)? (3) Is the case subject to permissive abstention under 28 U.S.C. §1334(c)(1)? (4) Is the case subject to equitable remand under 28 U.S.C. §1452(b)? And, finally, (5) is an award of attorney fees justified? The Court will address each issue, in turn.

A district court may exercise jurisdiction over all civil proceedings arising under title 11 of

---

[4] The claim based upon the Federal Employee's Liability Act was asserted by Plaintiffs against only the defendant railroad companies named in the Complaint. (Docket No. 1-3 at ¶¶27-28).

the Bankruptcy Code, or arising in or related to a case under title 11. 28 U.S.C. §1334(b). According to 28 U.S.C. §1452(a), a party may remove a claim that is "related to" a bankruptcy case to the federal district court presiding over the district in which a state court action has been commenced. A proceeding is considered to be "related to" a bankruptcy case for purposes of establishing jurisdiction if the "outcome of the proceeding could conceivably have any effect on the estate being administered in bankruptcy." *Pacor v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984), *overruled on other grounds by Things Remembered, Inc. v. Petrarca* 516 U.S. 124 (1995). However, "it is settled that the removal statutes are to be strictly construed against removal." *Steel Valley Authority v. Union Switch and Signal Division, et al.*, 809 F. 2d 1006, 1010 (3d Cir. 1987).

When seeking removal, the removing party must declare whether the action is "core," or "non-core." FED. R. BANKR. P. 9027(a)(1). A core proceeding is either one that is specifically listed in 28 U.S.C. §157(b), one that invokes a substantive right provided by title 11 (i.e. "arises under" title 11), or one that could only arise in the context of a bankruptcy case (i.e. "arises in" a title 11 case). *Halper v. Halper*, 164 F.3d 830, 836 (3d Cir. 1999). All other proceedings that are "related to" a bankruptcy case are considered non-core. *Id.* at 837. Upon motion by a party, a district court is required to abstain from hearing proceedings that are non-core and are based solely on a state law claim or cause of action (i.e. "mandatory abstention"). 28 U.S.C. §1334(c)(2).

Under 28 U.S.C. §1334(c)(1), a district court may also abstain from hearing a core proceeding (except a case under chapter 15 of title 11), "in the interest of justice, or in the interest of comity with State courts or respect for State law" (i.e. "permissive abstention"). However, abstention is "an extraordinary and narrow exception, . . . justified only where resort to state proceedings clearly serves an important countervailing interest." *In re Carriage House*

5

*Condominiums*, 415 B.R. 133, 143-44 (E.D.Pa. 2009), (citing *United Servs. Auto. Ass'n v. Muir*, 792 F. 2d 356, 360-61 (3d Cir. 1986)).  And, "once a federal court is determined to properly have jurisdiction over a matter, it has a 'virtually unflagging obligation' to exercise the jurisdiction conferred upon it by the Constitution or Congress." *Hohl v. Bastian*, 279 B.R. 165, 171 (W.D.Pa. 2002) (citing *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 821 (1976)).

A removed proceeding may be remanded from a district court to a state court on any equitable ground (i.e. "equitable remand").  28 U.S.C. §1452(b).  The decision to remand or not remand is non-reviewable.  *Id.,* 28 U.S.C. §1334(d).  "[A]ll doubts should be resolved in favor of remand." *Steel Valley Authority,* 809 F. 2d at 1010.

Finally, if a removed case is later remanded following a proper motion, the order to remand may include the just costs and actual expenses incurred as a result of the removal and motion to remand. 28 U.S.C. §1447(c).  The discretion to award such costs rests solely with the district court, and there are no definitive criteria for making such a determination. *Mints v. Educational Testing Service*, 99 F. 3d 1253, 1259-60 (3d Cir. 1996).

### 1.     *Removal and "Related to" Jurisdiction*

In *Pacor v. Higgins*, 743 F. 2d 984, 994 (3d Cir. 1984), the leading case in the Third Circuit on "related to" jurisdiction, the Court held that a civil proceeding is related to a bankruptcy case for purposes of establishing jurisdiction if the "outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy."  Common issues of fact between the proceeding and the bankruptcy case do not necessarily make a proceeding related to the bankruptcy case, and judicial economy cannot justify exercise of federal jurisdiction. *Id.*  However, the proceeding does not have to involve the debtor in the bankruptcy to make it related to the

bankruptcy. *Halper v. Halper*, 64 F. 3d 830, 837 (3d Cir. 1999). The term, "conceivable," in the *Pacor* test is a key component to making a determination about jurisdiction. *Id.* "Conceivable" does not simply mean that a proceeding will have a certain or likely impact upon a bankruptcy estate, but that "it is *possible* that a proceeding may impact the debtor's rights, liabilities, options, or freedom of action, or the handling and administration of the bankrupt estate." *Id.* (emphasis added).

In the current case, Defendant EMD argues that although GM is not a named party in Plaintiffs' complaint, "related to" jurisdiction exists because Defendant's clearly defined indemnity agreement with GM means that a judgment against EMD is essentially a judgment against GM's bankruptcy estate. (Docket No. 1 at 2). However, the fact that a defendant is seeking indemnity from a bankruptcy estate does not necessarily make a proceeding "related to" a bankruptcy. *See Pacor*, 743 F.2d 984. The potential significance of the indemnification to the bankruptcy's administration and the form of the indemnification agreement, if any exists, are important issues to resolve when determining if a proceeding will have a conceivable impact upon a bankruptcy estate.

In *Pacor*, the plaintiffs filed suit against Pacor, Inc., a chemicals distribution company, for asbestos related illness. *Pacor*, 743 F. 2d at 987. Pacor in turn impleaded its former asbestos supplier, Johns-Mansville Corporation, for indemnification. *Id.* Johns-Mansville subsequently filed for Chapter 11 bankruptcy, and Pacor sought to remove the proceeding against it to federal court under the court's "related to" jurisdiction. *Id.* The Court of Appeals for the Third Circuit held that such a removal would be improper, because the lack of a clear, explicit indemnification agreement meant that there would need to be intervening proceedings on the indemnification issue before any effect on the estate in bankruptcy. *Id.* at 995. The plaintiffs in *Pacor* never filed suit against Johns-Mansville, and if those plaintiffs won their case against Pacor, there would be no automatic liability

on the part of Johns-Mansville. *Id.* Therefore, there was no "related to" jurisdiction in *Pacor*.

In a similar case, *Hohl v. Bastian*, 279 B.R. 165 (W.D. Pa. 2002), the plaintiff brought a claim against a former employer for breach of contract. *Id.* at 168. The employer subsequently filed for bankruptcy. The plaintiff also sued an executive working for his former employer in a separate action. *Id.* The executive was indemnified by the former employer against such suits by an explicit provision in the former employer's bylaws. *Id.* The district court determined that there was "related to" jurisdiction, citing *Pacor* as the basis for its reasoning. *Id.* at 172. Based upon the language of the indemnification agreement, the district court recognized that there was an "apparently unconditional duty to indemnify . . . [and] a judgment in favor of Plaintiff . . . would automatically result in indemnification liability." *Id.* at 174. This certainly would affect the administration of the bankruptcy estate, as liabilities owed to other creditors would be diverted to meet a new indemnity obligation. *Id.* In pertinent part, the indemnification agreement in *Hohl* provided:

> The corporation shall indemnify any person who was or is a party or is threatened to be made a party . . . against expenses, including judgments, fines and amounts paid in settlement actually and reasonably incurred by him in connection with such action, suit or proceeding if he acted in good faith and in a manner he reasonably believed to be in or not opposed to the best interests of the corporation.

*Bastian*, 279 B.R. at 174-75. The district court appeared unconcerned with the conditions in this indemnity agreement, because they did not pose a sufficient barrier to the likelihood of an impact upon the bankruptcy estate. *Id.* at 175. However, the court did suggest that some conditions – such as limited duration of the agreement, a requirement of prompt notification to the indemnitor to invoke the agreement's provisions, or a necessity for specific request for defense and payment to the indemnitor – could make indemnification not sufficiently automatic to make the proceeding "related to" the bankruptcy for jurisdiction purposes. *Id.*

The Court of Appeals for the Third Circuit has commented that a clear contractual right to indemnification, though potentially posing a direct threat to a bankruptcy estate, may not necessarily be enough to make a proceeding related to the bankruptcy. *In re W.R. Grace & Co.*, 591 F.3d 164 (3d Cir. 2009). The Court of Appeals stated that

> [W]e do not mean to imply that contractual indemnity rights are in themselves sufficient to bring a dispute over that indemnity within the ambit of related-to jurisdiction. What will or will not be sufficiently related to a bankruptcy to warrant the exercise of subject matter jurisdiction is a matter that must be developed on a fact-specific, case-by-case basis.

*Id.* at 174, n. 9. This case-by-case analysis involves evaluating the relative severity of the proceeding's impact upon administration of a bankruptcy estate. In *Steel Workers Pension Trust v. Citigroup, Inc.*, 295 B.R. 747 (E.D. Pa. 2003), the plaintiff filed suit against security underwriter Citigroup when the bonds plaintiff had bought from WorldCom, Inc. became worthless subsequent to WorldCom's bankruptcy. *Id.* at 748. Citigroup sought to remove the plaintiff's action to federal court, because of its indemnity agreement with WorldCom. *Id.* The district court found that the Third Circuit had "rejected the implication that indemnification agreements *a fortiori* established "related to" jurisdiction. *Id.* at 752 (citing *In re Federal-Mogul Global, Inc.*, 300 F. 3d 368, 382 (3d Cir. 2002)). The district court found that the indemnification agreement at issue in *Steel Workers Pension Trust* did not create automatic liability and that, in light of the enormity of the WorldCom bankruptcy, any potential impact of the proceeding upon the bankruptcy would be relatively insignificant. *Id.* at 751. Given these circumstances, the court determined the proceeding was not related.

In the instant case, the Court does not have the benefit of reviewing the entirety of the Indemnification Agreement between Defendant and GM, particularly Section 10.03, which evidently

limits the right to indemnification, because Defendant has not provided the complete agreement despite relying upon it. In light of Third Circuit precedent requiring the Court to strictly construe removal statutes against removal, *Steel Valley Authority, supra*, the Court cannot assume that the right to indemnification is automatic. It may very well require an intervening proceeding to establish the right to indemnification. The Indemnification Agreement clearly states that indemnification is subject to the provisions of Article 10 ("Indemnification") and includes the limitations set forth in Section 10.03. (Docket No. 11-2 at 11). Without the benefit of viewing this section, at the very least, the Court must find that the proceeding is not related to the GM bankruptcy and therefore removal is improper.

Further, in keeping with the court's reasoning for denying "related to" jurisdiction in *Steel Workers Pension Trust* and the Third Circuit's holding in *Chakarian* that "related to" status should be determined in a fact-specific, case-by-case manner, this Court will consider the relative impact of potential liability on the bankrupt estate. GM is one of the world's largest multinational corporations, and is currently involved in the fourth largest Chapter 11 bankruptcy in U.S. history, with approximately $91 billion in assets.[5] In this case, if EMD were to be indemnified, the potential impact upon the administration of GM's bankruptcy estate, which was substantially completed by July of 2009,[6] would be minuscule. Any effect upon the estate is essentially non-existent, as was plaintiff's claim in *Steel Workers Pension Trust* with respect to the bankruptcy estate of WorldCom.

---

[5] Christopher Tkaczyk, *The 10 Largest U.S. Bankruptcies*, FORTUNE, Nov. 1 2009, http://money.cnn.com/galleries/2009/fortune/0905/gallery.largest_bankruptcies.fortune/4.html (last visited Feb. 17, 2010).

[6] Peter Whoriskey, *GM Emerges from Bankruptcy*, WASHINGTON POST, Jul 10, 2009, BUS (no page), *available at* http://www.washingtonpost.com/wp-dyn/content/article/2009/07/10/AR2009071001473.html (last visited Feb. 17. 2010).

"Related to" jurisdiction under §1334(b), therefore, does not exist, and the Court must deny removal.

### 2. "Core" versus "Non-core" Proceedings and Mandatory Remand

#### i. "Core versus "Non-core" Proceedings

Questions about whether a state proceeding is "core" or "non-core" in nature cannot truly be resolved until the "related to" jurisdiction question is answered, because "[n]on-core proceedings include the broader universe of all proceedings that are not core, but are nevertheless 'related to' a bankruptcy case." *Halper v. Halper*, 164 F. 3d 830, 837 (3d Cir. 1999). The Court has determined that "related to" jurisdiction does not exist in this case. But, since that determination was based in part on Defendant's failure to provide the Court with the contents of section 10.03 of the Indemnification Agreement, the Court will go on to discuss the core or non-core nature of Plaintiffs' claims, assuming, *arguendo*, that related to jurisdiction *does* exist. In many cases, the question of whether a proceeding is core or non-core is most important with respect to determining the scope of a bankruptcy court's jurisdiction over a particular case. *Halper*, 164 F. 3d at 836. Here, it is relevant in the removal versus remand setting to determine whether the proceeding is subject to mandatory remand.

In addition to the provisions of 28 U.S.C. §157(b), generally, the Court of Appeals for the Third Circuit has articulated a test to determine whether a proceeding is core or non-core:

> First, a court must consult §157(b). [I]t . . . provides an illustrative list of proceedings that may be considered "core."
> . . .
> Second . . . 'a proceeding is core [1] if it invokes a substantive right provided by title 11 or [2] if it is a proceeding, that by its nature, could arise only in the context of a bankruptcy case.'

*Halper*, 164 F.3d at 836. Thus, core proceedings are those that "arise under" title 11 or "arise in" a

case under title 11. Plaintiffs in the present case argue in the alternative that even if the proceeding is "related to" the bankruptcy, Defendant's removal to district court is still improper because the proceeding is non-core, and therefore subject to mandatory abstention. Defendant counters that if the proceeding is non-core, it is because proceedings of this type are specifically excluded from being core proceedings by §157(b)(2)(B), and §157(b)(4) specifies that such non-core proceedings are nonetheless not subject to mandatory abstention.

At the first step of the test articulated in *Halper*, the Court must determine whether the present case matches any proceedings in the illustrative list of core proceedings in §157(b)(2), including whether it falls into the exceptions listed at §§157(b)(2)(B) and (b)(2)(O). Section 157(b)(2)(B) provides that:

> (2) Core proceedings include, but are not limited to --
> . . . .
> (B) allowance or disallowance of claims against the estate or exemptions from property of the estate, and estimation of claims or interests for the purposes of confirming a plan under chapter 11, 12, or 13 of title 11 *but not the liquidation or estimation of contingent or unliquidated personal injury tort or wrongful death claims against the estate for purposes of distribution in a case under title 11*.

28 U.S.C. §157(b)(2)(B)(emphasis added). By the plain language of the statute, a non-core proceeding under this section must be a personal injury tort or wrongful death claim "against the estate." Plaintiffs have not asserted any claims directly against GM's bankruptcy estate, and have not named it in their pleadings. Despite Defendant's arguments to the contrary, §157(b)(2)(B) is inapplicable and does not make these proceedings non-core. Section 157(b)(2)(O), which states that core proceedings include "other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, *except personal injury*

*tort or wrongful death claims*" provides another specific exception to core proceedings. That section is the better fit for Plaintiffs' claims, because the proceeding is a personal injury tort, and its only putative relation to the GM bankruptcy is its possible effect upon the bankruptcy's administration. Thus, under the first step of the *Halper* test, the instant proceeding is not a core proceeding.[7]

Applying the second step of *the Halper* test further illustrates the non-core nature of this proceeding. No substantive right guaranteed to GM's bankruptcy estate is implicated by Plaintiffs' action. GM is not named in any of Plaintiffs' pleadings, nor is title 11 mentioned to any significant degree, even by Defendant. The only right under title 11 brought to the Court's attention by Defendant, is GM's right to a stay of proceedings against it while in bankruptcy. However, this proceeding is not against GM, and the stay provision is inapplicable. Further, in satisfaction of the second component of *Halper*'s test, it is clear that the present proceeding has no relation to GM's bankruptcy, and could have arisen regardless of GM's financial state. Under the Third Circuit's test, and according to §157(b)(2)(B), Plaintiffs' proceeding is non-core.

    ii.    *Mandatory Abstention*

As the proceeding has been found to be "non-core" in nature, this Court would be required to abstain from exercising jurisdiction according to the provisions of §1334(c)(2). The Court of Appeals for the Third Circuit has created a list of factors, to be used to determine whether abstention is required under §1334(c)(2):

(1) the proceeding is based on a state law claim or cause of action;

---

[7] As mentioned above, §157(b)(4) specifies that proceedings that are non-core proceedings under §157(b)(2)(B) are not subject to mandatory abstention. But that exception does not apply to proceedings that are non-core under §157(b)(2)(O), as here, so mandatory abstention can apply if the second step of the *Halper* test does not determine that these are core proceedings.

> (2) the claim or cause of action is "related to" a case under title 11, but does not "arise under" title 11 and does not "arise in" a case under title 11;
> (3) federal courts would not have jurisdiction over the claim but for its relation to a bankruptcy case;
> (4) an action "is commenced" in a state forum of appropriate jurisdiction; and
> (5) the action can be "timely adjudicated" in a state forum of appropriate jurisdiction.

*Stoe v. Flaherty*, 436 F.3d 209, 213 (3d Cir. 2006). If all five of these are satisfied, then the Court must abstain under §1334(c)(2). *Id.* The Court now finds the following: (1) it is undisputed that Plaintiffs' claims against Defendant in this case are based solely upon state law; (2) though the Court has determined otherwise, the case will be considered related to GM's bankruptcy for the sake of argument; (3) the district court would not have jurisdiction to hear this case but for its relation to the GM bankruptcy - there are no other federal questions, and there is no diversity; and (4) Plaintiffs included their claims against EMD in a larger proceeding currently before an appropriate state court.

The final issue of timely adjudication requires a more thorough analysis. "The question is not whether the action would be more quickly adjudicated in the bankruptcy court than in state court, but rather, whether the action can be *timely adjudicated* in the state court." *In re Exide Technologies*, 544 F.3d 196, 218 (3d Cir. 2008). This analysis must consider not only the relative efficiencies of state and federal court, but must focus upon the needs of the title 11 case. *Stoe*, 436 F. 3d at 219-20. In *Exide*, the Third Circuit determined that the action before it could be timely adjudicated in state court based upon the expeditious movement of the case through state proceedings, the clear intention of the state judge to move the case forward, and the fact that the case was placed on the docket to facilitate adjudication. *Exide*, 544 F. 3d at 218. Additionally, in a case where jurisdiction had been established due to its relatedness to a bankruptcy, the Eastern District of Pennsylvania used the following factors to aid in its determination of whether a proceeding could be timely adjudicated in

state court:

>   (1) backlog of the state court's calendar;
>   (2) status of the bankruptcy proceeding;
>   (3) complexity of issues; and
>   (4) whether the state court proceeding would prolong the administration or liquidation of the estate.

*In re Carriage House Condominiums, L.P.*, 415 B.R. 133, 144 (E.D. Pa. 2009).

In the present case, no evidence has been provided contesting Plaintiffs' assertion that its state court proceedings against other defendants are proceeding according to schedule, and nothing indicates that this matter would proceed in any manner other than expeditiously in state court. As Plaintiffs point out, if their asbestos exposure-related case were removed to federal court, it would likely be transferred to the United States District Court for the Eastern District of Pennsylvania as part of MDL 875 under the Judicial Panel on Multidistrict Litigation, where it would likely proceed much more slowly than in the state court in which proceedings are already being conducted. (Docket No. 8 at 7).

As for the status of GM's bankruptcy proceeding, GM filed for bankruptcy in June of 2009 and emerged from bankruptcy in July of 2009, only a few months prior to the filing of Plaintiffs' complaint in November of 2009[8], and it seems unlikely that GM's remaining bankruptcy administration will be substantially impacted. There are no novel, unresolved issues of state law at issue, and the although the case involves multiple parties, in this Court's estimation it is not complex. Finally, given the extremely insignificant impact Plaintiffs' claim could have upon GM's massive bankruptcy, it appears highly unlikely that the state court proceeding would create a major delay in administration and liquidation of the company's estate. For these reasons, Plaintiffs' case can be

---

[8] Peter Whoriskey, *GM Emerges from Bankruptcy, supra* note 4.

timely adjudicated in state court. Therefore, this non-core proceeding under §157(b)(2)(O) is subject to mandatory abstention, and this Court must decline to exercise jurisdiction.

### 3. *Permissive Abstention*

Alternatively, if mandatory abstention did not apply, and again, assuming this Court did have "related to" jurisdiction, it would be necessary to explore Plaintiffs' claim that permissive abstention under §1334(c)(1) would apply to the instant proceeding. In the interests of comity, justice, or respect for state law, a federal court is allowed to abstain from exercising jurisdiction over a proceeding related to a bankruptcy. 28 U.S.C. §1334(c)(1). In *In re Carriage House Condominiums, L.P.*, 415 B.R. 133 (E.D.Pa. 2009), the district court faced a situation in which "related to" jurisdiction had been established, and explained the common factors used to analyze whether permissive abstention was appropriate. The relevant factors include:

> (1) the effect on the efficient administration of the estate;
> (2) the extent to which state law issues predominate over bankruptcy issues;
> (3) the difficulty or unsettled nature of applicable state law;
> (4) the presence of a related proceeding commenced in state court or other non-bankruptcy court;
> (5) the jurisdictional basis, if any, under 28 U.S.C. §1334;
> (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case;
> (7) the substance rather than the form of an asserted "core" proceeding;
> (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court;
> (9) the burden on the court's docket;
> (10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties;
> (11) the existence of a right to a jury trial; and
> (12) the presence of non-debtor parties.

*Carriage House Condominiums*, 415 B.R. at 146-47.

Most of these factors have been addressed in the above discussions of "related-to" jurisdiction, core versus non-core proceedings, and mandatory absstention, and the Court finds that

these factors weigh in favor of exercising permissive abstention. Factor (10) in the above list has not been discussed, and while it is not this Court's finding that Defendant has sought removal in bad faith, it is more likely than not that Defendant has sought removal because it will stay the litigation indefinitely and relieve Defendant of the burden of further litigation and its attendant cost. If the case were to be transferred to the bankruptcy court overseeing the GM bankruptcy, there would also likely be serious issues of inconvenience to the Plaintiffs. In light of the fact that a state court proceeding with respect to Plaintiffs' claims against other defendants for the same matters has commenced, allowing duplicative proceedings in federal court would not be in the interests of comity or judicial economy. Factor (11), also not previously discussed, also weighs in Plaintiffs' favor as Plaintiffs have demanded a jury trial and have a right to such a trial under relevant state law.

While permissive abstention should not be granted casually, Defendant has not presented this Court with a compelling reason to exercise jurisdiction, and Plaintiffs have presented a persuasive argument for abstention. If "related to" jurisdiction were to exist, and if mandatory abstention did not apply, this Court nonetheless finds that permissive abstention is applicable and should be exercised.

### 4. *Equitable Remand*

If removal had been proper and abstention had not been warranted, 28 U.S.C. §1452(b) would still provide grounds for this Court to equitably remand these proceedings. §1452(b) provides that the "court . . . may remand such claim or cause of action on any equitable ground."

In *Hohl v. Bastian*, 279 B.R. at 178-79 (W.D. Pa. 2002), the court found that equitable remand was warranted, because a plaintiff's choice of forum is to be given some deference, and where the inconvenience to the defendant is not greater than that which would be suffered by a

plaintiff if removal was allowed, remand would be equitable. However, the court noted that a simple weighing of inconvenience and consideration for choice of forum is not enough. The court provided a number of factors to consider when analyzing the merits of equitable remand:

> (1) the effect on the efficient administration of the bankruptcy estate;
> (2) the extent to which issues of state law predominated;
> (3) the difficulty or unsettled nature of the applicable state law;
> (4) comity;
> (5) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case;
> (6) the existence of a right to a jury trial; and
> (7) prejudice to the involuntarily removed defendants.

*Id.* at 179. The Court has addressed all of these factors in the preceding discussion, and finds the factors to weigh in favor of Plaintiffs. Moreover, Plaintiffs would suffer far greater inconvenience by removal of the proceeding than would Defendant, and Plaintiffs properly filed their state claim in an appropriate state court. Hence, this Court finds that it would be inequitable to exercise jurisdiction over this case, and exercises its right to remand under §1452(b).

### 5. *Costs and Attorney Fees*

§1447(c) allows a district court the discretion to award attorney fees and costs related to unsuccessful removal. The Court of Appeals for the Third Circuit has found no need to establish explicit criteria with which to judge a claim for such fees. *Mints v. Educational Testing Service*, 99 F.3d 1253, 1260 (3d Cir. 1996). Bad faith is not a requirement for award of such costs and fees. *Id.* The determination should be made on a case-by-case basis, and a frivolous or insubstantial claim of jurisdiction for removal will support an award. *Id.* at 1261. Where difficult issues are raised and have a reasonable basis in the law, awards may not be appropriate. *Id.* The district court in *Township of Whitehall v. Allentown Auto Auction* stated the Appeals Court's holding succinctly when it held an award "is particularly appropriate where the lack of jurisdiction is plain in the law and would have

been revealed to counsel for the defendant with a minimum of research." *Township of Whitehall v. Allentown Auto Auction,* 966 F. Supp. 385, 386 (E.D.Pa. 1997).

In the instant case, the issue of "related to" jurisdiction presented by Defendant involved close questions of law that did not lend themselves to clear, quick resolution by a cursory review of the relevant law.[9] While the Defendant's case may not ultimately have been persuasive to the Court, that does not indicate a lack of a reasonable legal argument or good faith in the Defendant's petition for removal and accompanying arguments in its defense. Thus, the Court declines to award attorney fees in this case.

**V. Conclusion**

For the foregoing reasons, Plaintiffs' Motion to Remand to State Court (Docket No. 7) is granted, in part, and denied, in part.

It is granted in that Plaintiffs' claims are hereby remanded to the Court of Common Pleas of Westmoreland County. It is denied in that attorney fees shall not be awarded.

An appropriate Order follows.

*s/ Nora Barry Fischer*
Nora Barry Fischer
United States District Judge

Dated: February 22, 2010
cm/ecf: All counsel of record

---

[9] The instant case is distinguishable from other cases where this Court has awarded attorney fees, such as *First American Title Ins. Corp. v. JP Morgan Chase & Co.*, C.A. No. 07–0544, 2007 WL 2683820, *10 (W.D.Pa. Sep. 7, 2007), a more straightforward, non-bankruptcy removal case where there was "no objectively reasonable or colorable claim for JP Morgan's removal of the case" and "a lack of jurisdiction [was] plain . . . and would have been revealed to JP Morgan with little to no research."